**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

In re:                                              Case No. 19-24527-TPA

MICHAEL K. HERRON,                                  Chapter 11

    Debtor.                                         Doc. No.  96

**AMENDED**
**DISCLOSURE STATEMENT TO ACCOMPANY DEBTOR'S**
**AMENDED PLAN OF REORGANIZATION UNDER CHAPTER 11 OF**
**THE UNITED STATES BANKRUPTCY CODE DATED MAY 26, 2020**

Aurelius Robleto, Esq.
Renée M. Kuruce, Esq.

ROBLETO KURUCE, PLLC
6101 Penn Ave., Ste. 201
Pittsburgh, PA 15206
Telephone:   (412) 925-8194
Facsimile:   (412) 346-1035
Email:       apr@robletolaw.com
             rmk@robletolaw.com

*Attorneys for the Debtor*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

In re:                                                                Case No. 19-24527-TPA

MICHAEL K. HERRON,                                   Chapter 11

    Debtor.

**AMENDED
DISCLOSURE STATEMENT
TO ACCOMPANY AMENDED PLAN DATED MAY 26, 2020**

✔ Chapter 11 Small Business (Check box only if debtor has elected to be considered a small business under 11 U.S.C. § 1121(e))

Debtor furnishes this disclosure statement to creditors in the above-captioned matter pursuant to Bankruptcy Code § 1125 to assist them in evaluating debtor's proposed Chapter 11 plan, a copy of which is attached hereto. Creditors may vote for or against the plan of reorganization. Creditors who wish to vote must complete their ballots and return them to the following address before the deadline noted in the order approving the disclosure statement and fixing time. The Court will schedule a hearing on the plan pursuant to 11 U.S.C. § 1129.

    Address for return of ballots:

        ROBLETO KURUCE, PLLC
        6101 Penn Ave., Ste. 201
        Pittsburgh, PA 15206

**I.    Background**

    1.    *Name of Debtor*: The Debtor's name is Michael K. Herron.

    2.    *Type of Debtor (individual, partnership, corporation)*: The Debtor is an individual.

    3.    *Debtor's Business or Employment*: The Debtor is a medical doctor, board certified in radiology and is recently retired from the United States Naval Reserves after earning the rank of Captain. The Debtor now receives periodic income from three sources: (i) the operation of a medical practice in Homosassa, Florida; (ii) performance of medical services as an independent contractor; and (iii) rents from investment properties.

    3.    *Date of Chapter 11 Petition*: The Debtor commenced this case on November 21, 2019 (the "*Petition Date*"), by filing a voluntary petition under chapter 11 of the United States Bankruptcy Code.

5.  *Events that Caused the Filing*: In his capacity as a Naval Reservist, the Debtor served as Naval Flight Surgeon to several naval air squadrons. When not in active military service, the Debtor operated a private medical practice. However, during periods of active military service, the Debtor was unable to treat the patients of his medical practice. On those occasions, the Debtor's income was dramatically reduced. When the Debtor received orders to report for active duty in support of Operating Enduring Freedom, those orders specified a report date of November 30, 2012 and a service period of at least 410 days. That reduction in income, in tandem with the Debtor's diminished availability to communicate with his creditors and attorneys, imposed considerable strain on the Debtor's financial condition from which the Debtor has found no relief. That financial strain intensified after his former employer ceased operations. Despite its cessation of business, that former employer nevertheless advised the Debtor's prospective employers that it would enforce the covenant not to compete contained in the Debtor's employment agreement.

Nevertheless, the Debtor has tried in earnest to improve his circumstances, as evidenced by the Debtor's numerous and repeated, good faith efforts to seek loss mitigation efforts with his mortgage lenders and accommodations from his tax creditors. Unfortunately, in most instances, the Debtor's efforts were unsuccessful. Thus, seeing no viable alternative, and in order to preserve and maximize the value of the Debtor's estate and to provide for fair treatment and equitable treatment of his creditors, he sought to reorganize under chapter 11.

6.  *Anticipated Future of the Company & Source of this Information and Opinion*: The Debtor continues to operate his medical practice, perform medical services as an independent contractor, and receive rental income from his investment properties. The Debtor and his counsel believe that the Debtor's future income will allow him to fund his payment obligations under his chapter 11 plan.

7.  *Summarize all Significant Features of the Plan Including When and How Each Class of Creditor Will Be Paid and What, If Any, Liens Will Be Retained By Secured Creditors or Granted to Any Creditor Under the Plan*: First, the Debtor will seek a determination of the secured status of two creditors with claims secured by real property situate in Crystal River, Florida. The Debtor contends that the values of those two properties are dramatically less than the claimed outstanding balances of the mortgages encumbering them. Second, the Debtor will seek a determination that no portion of the $944,778.95 claim of the Internal Revenue Service should be accorded priority or secured status, and all of it should be subject to discharge. Third, the Debtor will surrender a disputed interest in a property, in full satisfaction of any claim against him related to that property.

The Debtor will pay all priority claims within five years, unless required to pay them sooner. Likewise, the Debtor will cure any delinquent mortgage claims within five years, by making periodic payments upon them. Additionally, the Debtor make regular payments of debt service upon any mortgage, in accordance with contractual terms, as they may be modified by the Bankruptcy Court's determinations of secured status. The Debtor's unsecured creditors will be paid the lesser of (i) the full amount of their allowed claims; or (ii) pro rata distributions from the Debtor from a fund of at least $10,000.00.

8.  *Are All Monthly Operating Statements Current and on File with The Clerk of Court?*

       *Yes* ✓  *No* _____    *If Not, Explain*:

  9.  *Does the plan provide for releases of nondebtor parties? Specify which parties and terms of release.* The Debtor's plan does not provide for a release of any non-debtor parties.

  10.  *Identify all executory contracts that are to be assumed or assumed and assigned. The following executory contracts are to be assumed under the Debtor's plan*: Lists of the executory contracts that the Debtor will assume and reject under his plan are attached hereto as *Exhibit A*.

  11.  *Has a bar date been set?*  *Yes* ✓  *No* _____
*(If not, a motion to set the bar date has been filed simultaneously with the filing of this disclosure statement.)* The claims bar date is May 19, 2020, and creditors, including governmental units have until May 19, 2020 to file proofs of claims.

  12.  *Has an election under 11 U.S.C. §1121(e) been filed with the Court to be treated as a small business?*
       *Yes* _____  *No* ✓

  13.  *Specify property that will be transferred subject to 11 U.S.C. § 1146.* The Debtor's plan makes no provision for the transfer of property pursuant to section 1146 of the Bankruptcy Code.

**II.  Creditors**

   A.  Secured Claims

### SECURED CLAIMS

| Creditor | Total Amount Owed | Arrearages | Type of Collateral Priority of Lien (1, 2, 3) | Disputed (D) Liquidated (L) Unliquidated (U) | Will Liens Be Retained Under the Plan (Y) or (N) |
|---|---|---|---|---|---|
| NexTier Bank (Chesterfield properties) | 92,720.60 | 0.00 | 2 | L | Y |
| Wells Fargo, as Trustee (155 Chesterfield) | 72,092.96 | 39,911.63 | 1 | L | Y |
| Wells Fargo, as Trustee (237 Chesterfield) | 20,889.20 | 337.94 | 1 | L | Y |
| Wells Fargo, as Trustee (340 Roup) | 200,992.24 | 108,076.93 | 1 | L | Y |
| Wells Fargo, as Trustee (3700 Orpwood) | 155,396.52 | 81,977.12 | 1 | L | Y |
| Bank of America (7167 Ross Garden Road) | 82,056.61 | 51,157.76 | 1 | D | Y |
| Wells Fargo, as Trustee (1122 SE Kings Bay Dr.) | 1,279,719.30 | 560,439.71 | 1 | D | Y |
| Bank of America (1132 SE Kings Bay Dr.) | 544,722.02 | 51,189.77 | 1 | D | Y |
| Deutsche Bank, as Trustee (731 Rosedale) | 390,203.90 | 1,750.27 | 1 | L | Y |
| Internal Revenue Service (SE Kings Bay Dr. properties) | 867,570.25 | 867,570.25 | 1 | D | N |
| SN Servicing Corp. (414 Fern St.) | 285,929.00 | 0.00 | 1 | L | Y |
| *Totals:* | **3,992,292.60** | **1,762,411.38** | | | |

   B.  Priority Claims        *n/a*

   C.  Unsecured Claims

   1. Amount Debtor Scheduled (Disputed and Undisputed)        $0.00
   2. Amount of Unscheduled Unsecured Claims 1        $134,632.75
   3. Total Claims Scheduled or Filed        $134,632.75

| | |
|---|---:|
| 4. Total Amount Stipulated Unsecured Claims | $134,632.75 |
| 5. Amount Debtor Disputes | $0.00 |
| 6. Estimated Allowable Unsecured | $134,632.75 |

D.  Other Classes of Creditors

| | |
|---|---:|
| 1. Amount Debtor Scheduled (Disputed and Undisputed) | $0.00 |
| 2. Amount of Unscheduled Claims 1 | $0.00 |
| 3. Total Claims Scheduled or Filed | $0.00 |
| 4. Amount Debtor Disputes | $0.00 |
| 5. Estimated Allowable Claims | $0.00 |

E.  Other Classes of Interest Holders

| | |
|---|---:|
| 1. Amount Debtor Scheduled (Disputed and Undisputed) | $0.00 |
| 2. Amount of Unscheduled Claims 1 | $0.00 |
| 3. Total Claims Scheduled or Filed | $0.00 |
| 4. Amount Debtor Disputes | $0.00 |
| 5. Estimated Allowable Claims | $0.00 |

## III. Assets

### ASSETS

| Asset | Value | Basis for Value Priority of Lien | Name of Lien Holder (if any) (Fair Market Value/Book Value) | Amount of Debtor's Equity (Value Minus Liens) |
|---|---:|---|---|---:|
| 1132 SE Kings Bay Dr. (FL) 34429 | 400,000.00 | FMV - 1 | Bank of America, N.A. | 0.00 |
| 731 Rosedale St. (MD) 21401 | 477,000.00 | FMV - 1 | n/a | 15,140.00 |
| 7167 Ross Garden Rd. 15206 | 54,000.00 | FMV - n/a | Bank of America, N.A. | n/a |
| 340 Roup Ave. 15232 | 315,000.00 | FMV - 1 | Wells Fargo as Trustee | 114,007.76 |
| 155 Chesterfield Ave. 15213 | 135,000.00 | FMV - 1 | Wells Fargo as Trustee | 62,907.04 |
| - | - | FMV - 2 | NexTier Bank | - |
| 237 Chesterfield Ave. 15213 | 155,000.00 | FMV - 1 | Wells Fargo as Trustee | 134,110.71 |
| - | - | FMV - 2 | NexTier Bank | - |
| 145 Chesterfield Ave. 15213 | 150,000.00 | FMV - 1 | Wells Fargo as Trustee | 57,279.40 |
| - | - | FMV - 2 | NexTier Bank | - |
| 1122 SE Kings Bay Dr. (FL) 34429 | 100,000.00 | FMV - 1 | Wells Fargo as Trustee | 0.00 |
| 3655 S. Suncoast Blvd (FL) | 852,000.00 | FMV - 1 | Steve Neff | n/a |
| 1276 W. Tacoma St. | 344,976.00 | FMV - 1 | Steve Neff | n/a |
| Furniture & household goods | 30,000.00 | Est. | | 30,000.00 |
| Electronics | 26,375.00 | Est. | | 26,375.00 |
| Collectables | 2,000.00 | Est. | | 2,000.00 |

| | | | | |
|---|---:|---|---:|---|
| Clothing | 23,000.00 | Est. | 23,000.00 | |
| Jewelry | 31,000.00 | Est. | 31,000.00 | |
| Cash | 125.00 | | 125.00 | |
| Checking Account | 294.00 | | 294.00 | |
| LLC Interests | 6.20 | | 6.20 | |
| 401(k) Account | 154,000.00 | | 154,000.00 | |
| Security deposit | 1,700.00 | | 1,700.00 | |
| Annuity | 125,000.00 | | 125,000.00 | |
| Irrevocable Trust | unknown | | unknown | |
| Note Receivable | 125,000.00 | | 125,000.00 | |
| TOTAL: | 2,582,976.00 | | TOTAL: | 901,945.11 |

1. *Are any assets which appear on Schedule A or B of the bankruptcy petition not listed above?* No.

*If so, identify asset and explain why asset is not in estate*:

2. *Are any assets listed above claimed as exempt? If so, attach a copy of Schedule C and any amendments*. The Debtor has claimed exemptions in certain of the above-described assets. A copy of the Debtor's Schedule C is attached hereto as *Exhibit B*.

## IV.   SUMMARY OF PLAN

1. *Effective Date of Plan*: The Effective Date for the Debtor's plan will occur upon the first date when all of the following conditions are met (i) an order confirming the Debtor's plan becomes final; (ii) the Debtor has accepted any material alteration or interpretation to any term or provision of the plan imposed by the Bankruptcy Court; and (iii) other documents and agreements necessary to implement this plan have been executed and delivered and all other actions required to be taken in connection with the Effective Date have occurred.

2. *Will cramdown be sought?* ✓ Yes (if necessary) ___ No
   *If Yes, state bar date*: May 19, 2020

3. Treatment of Secured **Non-Tax** Claims

### SECURED NON-TAX CLAIMS

| Creditor | Class | Amount Owed | Summary of Proposed Treatment | Reg. Payment | Cure Payments | Total Monthly Payments |
|---|---|---|---|---|---|---|
| NexTier Bank | 1 | 92,720.60 | Continue to pay as agreed. | 436.50 | 0.00 | 436.50 |
| Wells Fargo as Trustee | 3 | 1,279,719.30 | 506 action - rem. sec. claim paid as agreed - payment estimated | 850.62 | 0.00 | 850.62 |
| Bank of America | 3 | 544,722.02 | 506 action - rem. sec. claim paid as agreed - payment estimated | 3,750.67 | 0.00 | 3,750.67 |

| Creditor | Class | Amount | Treatment | | | |
|---|---|---|---|---|---|---|
| Wells Fargo as Trustee | 4 | 20,889.20 | Cure arrearages w/in 5 years; pay as agreed, unless Debtor sells property and pays claim in full | 359.60 | 5.63 | 365.23 |
| Wells Fargo as Trustee | 4 | 72,092.96 | Cure arrearages w/in 5 years; pay as agreed, unless Debtor sells property and pays claim in full | 399.34 | 665.19 | 1,064.53 |
| Deutsche Bank/PHH | 4 | 390,203.90 | Cure arrearages w/in 5 years; pay as agreed, unless Debtor sells property and pays claim in full | 2,168.99 | 29.17 | 2,198.16 |
| Wells Fargo as Trustee | 4 | 155,396.52 | Cure arrearages w/in 5 years; pay as agreed, unless Debtor sells property and pays claim in full | 883.29 | 1,366.29 | 2,249.58 |
| Wells Fargo as Trustee | 4 | 200,992.24 | Cure arrearages w/in 5 years; pay as agreed, unless Debtor sells property and pays claim in full | 1,272.99 | 1,801.28 | 3,074.27 |
| Bank of America | 5 | 82,056.61 | Surrender collateral in full satisfaction of claim. | 355.55 | 0.00 | 355.55 |
| **TOTALS:** | | **2,838,793.35** | | **10,477.55** | **3,867.56** | **14,345.11** |

4. Treatment of Secured Tax Claims

| Creditor | Class | Amount Owed | Summary of Proposed Treatment |
|---|---|---|---|
| IRS | 6 | 867,570.25 | Seek determinations of (i) secured status; and (ii) dischargeability; treatment in accordance with outcomes. |

5. Treatment of Administrative Non-Tax Claims[2]

### ADMINISTRATIVE NON-TAX CLAIMS

| Creditor | Amount Owed | Type of Debt | Summary of Proposed Treatment and Date of First Payment |
|---|---|---|---|
| Robleto Kuruce, PLLC (est.) | 35,000.00 | anticipated counsel fees | To be paid in full on the effective date, unless creditor agrees to less favorable terms |
| United States trustee fees | 0.00 | statutory fees | To be paid in full on the effective date, unless creditor agrees to less favorable terms |

---

[2] Include all §503(b) administrative claims.

|  |  |
|---|---|
| TOTAL: | 35,000.00 |

\* Identify and Use Separate Line for Each Professional and Estimated Amount of Payment
\*\* Type of Debt (P=Professional, TD=Trade, TX=Taxes)

6. Treatment of Administrative Tax Claims

*While there are no Administrative Tax Claims presently due, the Debtor will pay any Allowed Administrative Tax Claims as they become due.*

7. Treatment of Priority Non-Tax Claims

-None-

8. Treatment of Priority Tax Claims[1]

-None-

9. Treatment of General Unsecured Non-Tax Claims

### GENERAL UNSECURED NON-TAX CLAIMS

| Creditor | Class | Total Amount Owed | Percent of Dividend* | Est. Distribution |
|---|---|---|---|---|
| American Express National Bank | 8 | 12,733.98 | 7.43% | 945.83 |
| Bank of America, N.A. | 8 | 29,411.73 | 7.43% | 2,184.59 |
| PA Dept. of Revenue | 8 | 278.34 | 7.43% | 20.67 |
| Internal Revenue Service | 8 | 77,208.70 | 7.43% | 5,734.76 |
| William G. Cherbonnier, Jr. | 8 | 15,000.00 | 7.43% | 1,114.14 |
|  | **Totals:** | 134,632.75 |  | **10,000.00** |

\* Percent dividend expressed is estimated.

10. Treatment of General Unsecured Tax Claims

| Creditor | Class | Total Amount Owed | Percent of Dividend* | Est. Distribution |
|---|---|---|---|---|
| Internal Revenue Service | 8 | 77,208.70 | 7.43% | 5,734.76 |

11. *Will periodic payments be made to unsecured creditors?*

Yes ✓   No _____   *First payment to begin*: Payments shall begin within 180 days from the Effective Date (see item 1 of this section IV, Summary of Plan).

---

[1] Include dates when any §507(a)(7) taxes were assessed.

*If so:*

*Amount of each payment (aggregate to all unsecured claimants)*
*Estimated date of first payment*: August 1, 2020
*Time period between payments*: 180 days
*Estimated date of last payment*: February 1, 2025
*Contingencies, if any*: Confirmation of this plan

*State source of funds for planned payments, including funds necessary for capital replacement, repairs, or improvements*: The source of funds for the Debtor's proposed distributions shall be from the Debtor's income from business operations and employment.

*Other significant features of the plan*: The Debtor has proposed a plan designed to promote the interests of his secured Creditors in mitigating their losses, having a predictable path to a resolution and protecting themselves from further losses. At the same time, the Debtor believes that his chapter 11 plan will produce a result for his unsecured creditors, who would be unlikely to receive any value from their claims in a case under chapter 7 of the Bankruptcy Code.

*Include any other information necessary to explain this plan*: n/a

### V. Comparison of Plan with Chapter 7 Liquidation

If debtor's proposed plan is not confirmed, the potential alternatives would include proposal of a different plan, dismissal of the case or conversion of the case to Chapter 7. If this case is converted to Chapter 7, a trustee will be appointed to liquidate the debtor's non-exempt assets. In this event, all secured claims and priority claims, including all expenses of administration, must be paid in full before any distribution is made to unsecured claimants.

| | |
|---|---:|
| Total value of Chapter 7 estate (See Section III) | 2,582,976.00 |
| 1. Less secured claims (See Section II A) | 3,992,292.60 |
| 2. Less administrative claims (See Section IV-5-6 and include approximate Chapter 7 expenses) | 35,000.00 |
| 3. Less other priority claims (See Section II B) | 0.00 |
| Total Amount Available for Distribution to Unsecured Creditors | 0.00 |
| Divided by total allowable unsecured claims of (See Section II C) | 0.00 |
| *Est. Amount of Allowable General Unsecured Claims* | 134,632.75 |
| *Est. Amount Available for Distribution* | 0.00 |

- 9 -

    Percentage of Dividend to Unsecured Creditors:    0.00%

*Will the creditors fare better under the plan than they would in a Chapter 7 liquidation?*

    Yes  ✓   No _____

*Explain*: In a hypothetical chapter 7 case, no funds would be available for distribution to the holders of non-priority unsecured claims. In contrast, under the plan, the Debtor estimates that the holders of allowed non-priority unsecured claims creditors may receive 7.43% of the value of their claims.

## VI. Feasibility

  A. Attach Income Statement for Prior 12 Months.
  B. Attach Cash Flow Statement for Prior 12 Months.
  C. Attach Cash Flow Projections for Next 12 Months.

*Estimated amount to be paid on effective date of plan, including administrative expenses*. The Debtor estimates that $35,000.00 may be paid on the effective date of the plan.

*Show how this amount was calculated*.

  $35,000.00  *Administrative Claims*
  $0.00  *Taxes*
  $0.00  *Unsecured Creditors*

  <u>$35,000.00</u>  TOTAL

*What assumptions are made to justify the increase in cash available for the funding of the plan?* The Debtor anticipates increased cash flow, beginning around September 2020, arising from new employment.

*Will funds be available in the full amount for administrative expenses on the effective date of the plan? From what source? If not available, why not and when will payments be made?* At the time of filing of the Debtor's plan and disclosure statement, no administrative expense claims had been unpaid. The Debtor anticipates that he will have sufficient funds to pay all administrative expenses as they become due during the pendency of this chapter 11 case.

Cash on hand $32,676.86 (*Current*). Attach current bank statement.

Cash on hand $50,000.00 (*Estimated amount available on date of confirmation*)

*If this amount is less than the amount necessary at confirmation, how will debtor make up the shortfall?* The Debtor's cash on hand is sufficient for him to make the payments that he will be required to make on the effective date.

## VII. Management Salaries

This section does not apply to the Debtor.

**VIII.   Identify the Effect on Plan Payments and Specify Each of the Following:**

1. *What, if any, litigation is pending*?  On the date on which the Debtor commenced this chapter 11 case, the below-listed matters had been pending.

> *Internal Revenue Service v. Herron* – Florida, Federal Tax Lien (2015009294)
> *IRS v. Herron,* C.P. Allegheny, case no. FTL-15-00229
> *City of Pittsburgh v. Herron,* C.P. Allegheny, case no. DTD-96-65398
>
> *Bank of America v. Herron*, C.P. Allegheny, case no. MG-16-00882
> *Wells Fargo v. Herron*, C.P. Allegheny, case no. MG-17-000089
> *Wells Fargo v. Herron*, C.P. Allegheny, case no. GD-17-001774
> *Wells Fargo v. Herron*, C.P. Allegheny, case no. GD-17-000183

2. *What, if any, litigation is proposed or contemplated*?  The Debtor may file certain creditor related actions and claims objections in this chapter 11 case but does not anticipate filing any non-bankruptcy causes of action.

*None, apart from the adversary proceedings and contested matters contemplated in furtherance of the Debtor's Plan.*

**IX.    Additional Information and Comments**

*-None-*

## X.   Certification

The undersigned hereby certifies that the information herein is true and correct to the best of my knowledge and belief formed after reasonable inquiry.


Dated:  May 26, 2020          /s/ Michael K. Herron
                              Michael K. Herron,
                              *the Debtor in Possession*

                                   -and-

                              /s/ Aurelius Robleto
                              Aurelius Robleto
                              PA ID No. 94633
                              Renée M. Kuruce
                              PA ID No. 314691
                              ROBLETO KURUCE, PLLC
                              6101 Penn Ave., Ste. 201
                              Pittsburgh, PA 15206
                              Tel:  (412) 925-8194
                              Fax:  (412) 346-1035
                              apr@robletolaw.com
                              rmk@robletolaw.com

## HISTORIC SUMMARY

| POST PETITION PERIODS | MONTH ONE | MONTH TWO | MONTH THREE | MONTH FOUR | MONTH FIVE | MONTH SIX | MONTH SEVEN | MONTH EIGHT | MONTH NINE | MONTH TEN | MONTH ELEVEN | MONTH TWELVE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. TOTAL CASH FLOW FROM OPERATIONS: | 354.53 | 14,027.59 | 96,459.43 | 18,406.53 | 363.68 | 24,399.50 | | | | | | |
| 2. LOSS TOTAL DISBURSEMENTS EXCLUDING PAYMENTS TO CREDITORS IN A PLAN: | 336.94 | 3,325.35 | 37,130.15 | 28,449.50 | 27,243.79 | 6,336.22 | | | | | | |
| 3. NET CASH FLOW: | 17.59 | 10,702.24 | 59,329.28 | (10,042.97) | (26,880.11) | 18,063.28 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

**DEFINITIONS**

TOTAL CASH FLOW FROM OPERATIONS: THE TOTAL AMOUNT OF FUNDS COLLECTED IN A SPECIFIC PERIOD FROM CASH SALES, COLLECTION OF ACCOUNTS RECEIVABLE, AND OTHER INCOME, EXCLUDING LOANS PROCEEDS, CASH CONTRIBUTIONS FROM INSIDERS, AND SALES TAXES COLLECTED.

TOTAL DISBURSEMENTS EXCLUDING PAYMENTS TO CREDITORS IN A PLAN: THE TOTAL DISBURSEMENTS IN A SPECIFIC PERIOD FOR PRODUCTION COSTS, GENERAL AND ADMINISTRATIVE COSTS, EXCLUDING PAYMENTS TO CREDITORS TO BE PAID UNDER THE TERMS OF THE PLAN.

## PROJECTED SUMMARY

| POST PETITION PERIODS | MONTH ONE | MONTH TWO | MONTH THREE | MONTH FOUR | MONTH FIVE | MONTH SIX | MONTH SEVEN | MONTH EIGHT | MONTH NINE | MONTH TEN | MONTH ELEVEN | MONTH TWELVE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4. TOTAL CASH FLOW FROM OPERATIONS: | 25,000.00 | 25,000.00 | 25,000.00 | 32,000.00 | 32,000.00 | 32,000.00 | 32,000.00 | 32,000.00 | 32,000.00 | 32,000.00 | 32,000.00 | 32,000.00 |
| 5. LOSS TOTAL DISBURSEMENTS EXCLUDING PAYMENTS TO CREDITORS IN A PLAN: | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 |
| 6. ANTICIPATED CASH FLOW AVAILABLE FOR PLAN: | 10,000.00 | 10,000.00 | 10,000.00 | 17,000.00 | 17,000.00 | 17,000.00 | 17,000.00 | 17,000.00 | 17,000.00 | 17,000.00 | 17,000.00 | 17,000.00 |

**DEFINITIONS**

TOTAL PROJECTED CASH FLOW FROM OPERATIONS: TOTAL AMOUNT OF PROJECTED FUNDS COLLECTED IN A SPECIFIC PERIOD FROM CASH SALES, COLLECTION OF ACCOUNTS RECEIVABLE, AND OTHER INCOME, EXCLUDING LOANS PROCEEDS, CASH CONTRIBUTIONS FROM INSIDERS, AND SALES TAXES COLLECTED.

TOTAL DISBURSEMENTS EXCLUDING PAYMENTS TO CREDITORS IN A PLAN: TOTAL PROJECTED DISBURSEMENTS IN A SPECIFIC PERIOD FOR PRODUCTION COSTS, GENERAL AND ADMINISTRATIVE COSTS, EXCLUDING PAYMENTS TO CREDITORS TO BE PAID UNDER THE TERMS OF THE PROPOSED PLAN.

## PLAN FEASIBILITY

| POST PETITION PERIODS | MONTH ONE | MONTH TWO | MONTH THREE | MONTH FOUR | MONTH FIVE | MONTH SIX | MONTH SEVEN | MONTH EIGHT | MONTH NINE | MONTH TEN | MONTH ELEVEN | MONTH TWELVE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ANTICIPATED RECEIPTS AVAILABLE FOR PLAN (SEE LINE 6, ABOVE): | 10,000.00 | 10,000.00 | 10,000.00 | 17,000.00 | 17,000.00 | 17,000.00 | 17,000.00 | 17,000.00 | 17,000.00 | 17,000.00 | 17,000.00 | 17,000.00 |
| LESS PROPOSED PLAN PAYMENTS (SEE SECTION IV): | 35,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 |
| OVERAGE/(SHORTAGE) OF CASH FLOW AVAILABLE TO FUND PLAN: | (25,000.00) | (5,000.00) | (5,000.00) | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 |